UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ELIZABETH S. FITZPATRICK,

Plaintiff,

v.

KEVIN JACKSON, TROY HAILS, and JEREMY OSBORN,

Defendants.

Case No. 25-cv-2216-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on the First Motion for Issuance of Subpoena (Doc. 43), Motion for Expedited Consideration (Doc. 44), and First MOTION for Discovery Record Preservation (Doc. 47) filed by the plaintiff Elizabeth S. Fitzpatrick.

## I. Factual Background

According to the Amended Complaint, on March 26, 2021, the defendants Kevin Jackson, Troy Hails, and Jeremy Osborn, all detectives with the Mt. Vernon, Illinois, Police Department, searched the home of Fitzpatrick and her husband, Brandon A. Fitzpatrick (for clarity, the Court will refer to the plaintiff's husband by his first name). Fitzpatrick alleges that although the defendants announced that they had a search warrant, they never provided it to Fitzpatrick during the search and in fact, "they had no search warrant or, alternatively, were acting on an invalid search warrant." They kicked in the front door onto Fitzpatrick, dragged her out of the house in her nightgown, and would not let her back in. Brandon was eventually convicted of a crime related to the search, although it appears he is still challenging some aspects of that conviction in a post-conviction petition.[1]

Fitzpatrick and Brandon jointly filed a complaint on December 22, 2025. (Doc. 1). Their cases

[1] The Court has consulted the public record of Brandon's criminal case, 2021-CF-144, from the Jefferson County Circuit Court docket. *See* Judici.com, Jefferson County, search for 2021CF144.

were severed, and Fitzpatrick filed the operative Amended Complaint on April 20, 2026, asserting the following claims: search without a valid warrant[2] in violation of the Fourth and Fourteenth Amendments (Count 1), seizure of her person in violation of the Fourth and Fourteenth Amendments (Count 2), disruption of her family unit in violation of the Fourteenth Amendment due process clause (Count 3), and emotional distress in violation of the Fourteenth Amendment due process clause (Count 4). (Doc. 19).

Fitzpatrick moved for the issuance of two subpoenas duces tecum directed to the Jefferson County Circuit Clerk and the 2nd Judicial Circuit Court Reporting Services respectively. She further asked that the Court expedite consideration of this issue in light of the upcoming deadline for the defendants' depositions on October 30, 2026. The defendants did not respond to the motions. On September 24, 2026, the Court held a hearing on those motions. (Doc. 45). Following the hearing, Fitzpatrick filed her First Motion for Discovery Record Preservation. (Doc. 47).[3]

For the reasons explained below, the court **GRANTS** the plaintiff's motion for expedited consideration but **DENIES** her request to subpoena under principles of comity and federalism and because she has failed to show how the requests are relevant and proportional to the needs of the case or cannot be obtained through other means. The plaintiff's First Motion for Discovery Record Preservation (Doc. 47) is also **DENIED** to the extent it seeks to preserve discovery documents in the Court's docket. The Court is not a repository for a party's freestanding evidence. Evidence should be filed only as an attachment to a relevant motion or used as an exhibit at trial. The Court, however, has considered the submitted material in ruling on Fitzpatrick's motion to subpoena.

---

[2] In places, Fitzpatrick suggests there was no warrant at all, Am. Compl. ¶ 48; at other places she suggests a warrant existed but that it was invalid, Am. Compl. ¶ 18.

[3] Fitzpatrick further filed contemporaneously with the motion for discovery record preservation, her "First MOTION to Compel *discovery* (Doc. 46). Because briefing on that motion is still pending, the Court will not address it in this Memorandum and Order.

## II. Discussion

A *pro se* litigant who wishes to subpoena a third party must do so through the Clerk of Court, after seeking leave by the Court. Fed. R. Civ. P. 45(a)(3); SDIL-LR 45.1(a). The motion to issue the subpoena "must address the relevancy of the subject persons or documents of the requested subpoena to the claims or defenses at issue." SDIL-LR 45.1(b). Further, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

*A. Subpoena Directed to the Jefferson County Circuit Clerk*

Fitzpatrick first seeks the issuance of a subpoena directed to the Jefferson County Circuit Clerk for production of the following documents:

> 1. The docket sheet, register of actions, or equivalent chronological case record for Jefferson County cases 18-CF-128 and 18-CF-336 reflecting all entries on March 25, 2021;
>
> 2. All minute entries, minute orders, clerk's notations, half-sheets, courtroom minute sheets, case-progress notations, or written orders generated or maintained in connection with proceedings in 18-CF-128 or 18-CF-336 on March 25, 2021;
>
> 3. Any daily docket, court-call sheet, courtroom calendar, judge's call sheet, clerk's courtroom worksheet, chronological courtroom log, or similar record identifying matters scheduled for or actually called before Judge Jerry E. Crisel on March 25, 2021;
>
> 4. Any record reflecting the time at which 18-CF-128 or 18-CF-336 was called, recessed, reconvened, continued, concluded, or otherwise addressed by Judge Crisel on March 25, 2021, including any record of a morning session, lunch recess, afternoon reconvening, or conclusion of the court call;
>
> 5. Any record identifying the courtroom clerk or official court reporter assigned to Judge Crisel's courtroom on March 25, 2021;
>
> 6. Any docket, index, miscellaneous case record, search-warrant docket, warrant file, case number, or other judicial record reflecting that Mt. Vernon Police Department Detective Jeremy Osborn presented an application or complaint for a search warrant to Judge Jerry E. Crisel on March 25, 2021, including at or near 2:59 p.m., in connection with Brandon A. Fitzpatrick or the investigation that resulted in 21-CF-144; and

> 7. The alleged March 25, 2021 search-warrant application, supporting affidavit or complaint, signed warrant, and any filing, receipt, docketing, timestamp, or case-assignment record showing when those documents were received, filed, docketed, or placed in judicial custody after execution or return.

(Doc. 43-1).

Fitzpatrick claims that those documents are relevant to the validity of the judicial authorization of the March 26, 2021, search. In her subsequent motion for preservation of records, Fitzpatrick represents that a FOIA request to the Mt. Vernon Police Department led to the production of non-certified copies of the "warrant/application packet," which, however, did not include "a returned executed warrant, sworn inventory, or a court-file identifier." (Doc. 47, p. 3). The warrant appears to have been signed by Judge Jerry E. Crisel on March 25, 2021, at approximately 2:59 p.m. Fitzpatrick challenges the authenticity of that warrant. She states in her filings that the Jefferson County Circuit Clerk's Office has refused to provide any copies and has represented to Brandon that the warrant information was "sealed or impounded and that he needed to ask a judge for access." (Doc. 47, p. 3).

1. Warrant-Related Material

The Court denies Fitzpatrick's request to subpoena the Jefferson County Circuit Clerk for the warrant-related material. The Court does not doubt that the warrant application packet is relevant to Fitzpatrick's claims for unlawful search and seizure in violation of the Fourth and Fourteenth Amendments. However, under principles of federalism and comity, the Court will refrain from issuing a subpoena to a state court as to search warrant material that is potentially sealed or impounded unless Fitzpatrick shows that she, individually, has followed all the appropriate procedures before the state court for obtaining it. The Seventh Circuit illustrated this principle in *O'Keefe v. Chisholm*, 769 F.3d 936, 943 (7th Cir. 2014), where it reversed a district court order authorizing the disclosure of sealed documents that were gathered through a state proceeding and were thereafter filed in a federal case:

> Once again, federalism supplies the reason. The documents that the litigants want to disclose, or conceal, were gathered as part of a state proceeding. Wisconsin, not the

> federal judiciary, should determine whether, and to what extent, documents gathered in a John Doe proceeding are disclosed to the public. See *Socialist Workers Party v. Grubisic,* 619 F.2d 641, 643 (7th Cir. 1980) ("federal common law ... accords at least a qualified privilege to the records of state grand jury proceedings"). Otherwise, the very fact that someone chose to complain, in federal court, about the conduct of an ongoing state investigation would defeat the state interest in secrecy, even if the federal court concludes—as we have done in this opinion—that the controversy does not belong in federal court. It is easy to file complaints and drop documents into the federal record, but overcoming a state-law privilege for investigative documents requires more than that. Otherwise state rules would be at every litigant's mercy.

*O'Keefe v. Chisholm*, 769 F.3d 936, 943 (7th Cir. 2014). Fitzpatrick relies on *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) for the proposition that state agencies are subject to a district court's subpoena power under Rule 45. While the Seventh Circuit in *Ott* held the state entities are technically "persons" for purposes of Rule 45, that ruling does override the comity and federalism considerations that are triggered when a subpoena targets state sensitive investigative material, as explained in *O'Keefe*.

Here, Fitzpatrick has not shown that she, individually, has petitioned the state court for leave to obtain certified copies of the warrant at issue for the purposes of this federal litigation. Fitzpatrick devotes substantial part of her motion for preservation of records discussing Brandon's and his counsel's efforts to maintain the "common-law record" for his pending state criminal case. The Court reminds Fitzpatrick that Brandon is not a party to this litigation. Any efforts on his behalf to obtain those records for his cases do not excuse Fitzpatrick's independent duty to seek leave by the state court to obtain access to potentially sealed material that is relevant to this pending litigation.

The Court further notes that Fitzpatrick's request for production as to the "returned executed warrant, sworn inventory, or court-file identifier" is denied on one additional ground: Fitzpatrick has not shown its relevance to the claims she asserts in this case. Fitzpatrick does not explain how any deficiencies in the return of the executed warrant would invalidate the already completed search and seizure on March 26, 2021, or how it would be relevant to establish her claims of emotional distress

or disruption of her family unit. Notably, when questioned by the Court during the hearing, Fitzpatrick indicated that those documents are more relevant to Brandon's case. Again, Brandon is not a party to this federal litigation, and this is not the forum to relitigate any challenges to his state criminal case.

2. Requests Regarding the Timeline of Proceedings Before Judge Crisel on March 25, 2021

Fitzpatrick's request to subpoena the complete timeline of the proceedings before Judge Crisel on March 25, 2021, is also **DENIED**. First, Fitzpatrick references Brandon's efforts to obtain those documents, but she has not demonstrated her independent attempts to obtain them for purposes of this litigation. Further, the requests are overbroad. While not clear from her motion, Fitzpatrick appears to argue that the complete timeline of Judge Crisel's calendar on that day, including the hearings on the two cases involving Brandon, could show that Judge Crisel could not have executed the search warrant on the purported date and time. Even setting aside the attenuated connection between this case and the information sought, the request is overbroad. It encompasses potentially sensitive or otherwise privileged information as well as proceedings that are temporally remote from the time Judge Crisel appears to have signed the warrant. For instance, review of the public record from the Jefferson County Circuit Court docket in cases 2018-CF-128 and 2018-CF-336 shows that those matters were set for a hearing on March 25, 2021, at 9:30 a.m.[4] Fitzpatrick represents in her motion that, in accordance with the records she has already obtained from the Jefferson County Circuit Clerk for those cases, the "jury trial was vacated and the matter was reset for status." (Doc. 43, p. 3). The Court cannot imagine how a hearing at 9:30 a.m. would have prevented Judge Crisel from signing a warrant at 2:39 p.m. later that day.

---

[4] See Judici.com, Jefferson County, search for 2018CF128 and 2018CF336.

*B. Subpoena Directed to the 2nd Judicial Circuit Court Reporting Services/Court Reporter Supervisor*

Fitzpatrick also seeks the issuance of a subpoena directed to the 2nd Judicial Circuit Court Reporting Services/Court Reporter Supervisor for the following documents:

> 1. A certified transcript or report of proceedings for all proceedings involving Brandon A. Fitzpatrick in Jefferson County case 18-CF-128 on March 25, 2021;
>
> 2. A certified transcript or report of proceedings for all proceedings involving Brandon A. Fitzpatrick in Jefferson County case 18-CF-336 on March 25, 2021;
>
> 3. Records identifying the official court reporter, substitute reporter, court-reporting specialist, or other person assigned to Judge Jerry E. Crisel's courtroom on March 25, 2021, including the afternoon session;
>
> 4. Any reporter assignment sheet, assignment log, schedule, administrative record, or similar record showing which court reporter was assigned to Judge Crisel during the morning and afternoon of March 25, 2021;
>
> 5. Records sufficient to identify whether the March 25, 2021 stenographic or electronic record of the proceedings in 18-CF-128 or 18-CF-336 contains time-of-day information, timestamps, metadata, file-creation information, or other information capable of establishing when portions of those proceedings occurred;
>
> 6. To the extent the timing requested above cannot be established from the certified transcript, assignment records, or other ordinary court-reporting records, the underlying stenographic notes, electronic notes, synchronized audio, or other source material for Brandon A. Fitzpatrick's March 25, 2021 proceedings in 18-CF-128 and 18-CF-336, limited to the extent necessary to establish the sequence or time of those proceedings and subject to any applicable legal protection; and
>
> 7. If any requested transcript cannot be prepared or any source material no longer exists, records sufficient to identify whether it previously existed, the applicable retention or disposition authority, and the date and manner of any disposition, if known.

(Doc. 43-2).

As with the proposed subpoena directed to the Circuit Clerk, Fitzpatrick has failed to show that the requested information is relevant and proportional to the needs of this case. It appears that the only potential relevance of the requested information to the claims she asserts is to confirm the authenticity of the search warrant at issue. To that end, those requests are overbroad. The Court may

reassess their proportionality and relevance after Fitzpatrick demonstrates her own attempts to confirm the authenticity of the warrant at issue through the state court. At this stage, however, her requests are **DENIED**.

## III. Conclusion

For the foregoing reasons, the Court **GRANTS** the plaintiff Elizabeth S. Fitzpatrick's Motion for Expedited Consideration (Doc. 44) and **DENIES** her First Motion for Issuance of Subpoena (Doc. 43) and First MOTION for Discovery Record Preservation (Doc. 47).

**IT IS SO ORDERED.**
**DATED: September 30, 2026**

**J. PHIL GILBERT**
**DISTRICT JUDGE**